UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES EDWARD BOYLE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5717** |
| **KATHY KLIEBERT** | **SECTION B(4)** |

**ORDER AND REASONS**

**Nature of Motion and Relief Sought**

Before the Court is Defendant Kathy Kliebert's Rule 12(b)(6) Motion to Dismiss (Rec. Doc. No. 15) and Motion for Sanctions (Rec. Doc. No. 16). For the reasons enumerated below,

**IT IS ORDERED** that Defendant's Motion to Dismiss is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Sanctions is **DENIED**.

**Causes of Action and Facts of Case**

**I. Alleged Facts**

Plaintiffs, James Boyle and Janis Boyle individually and on behalf of their minor child "D.B.", brought the instant suit against Kathy Kliebert in her official capacity as the Secretary of the Louisiana Department of Health and Hospitals (DHH)[1] under

---

[1] Plaintiffs originally named other state officials and the Easter Seals of Louisiana as defendants, however those defendants were all voluntarily dismissed from this action by Plaintiffs. (Rec. Doc. No. 7).

1

42 U.S.C. § 1983.[2] As alleged in their Complaint[3], D.B. suffers from cerebral palsy with spastic quadriplegia and hypertonicity, and requires extensive medical treatment. To pay for this treatment, Plaintiffs previously received benefits from the Louisiana Medicaid and Children's Choice Waiver Program ("CC" or "Waiver Program"), including Early and Periodic Screening and Diagnostic Treatment (EPSDT).[4]

As part of the Waiver Program, Plaintiffs utilized an agency approved support coordination services provider to develop a comprehensive plan of care (CPOC) for D.B. D.B.'s CPOC included intensive physical therapy at the Pediatric Fitness Center (PFC) in Michigan. D.B. received treatment at the PFC on several occasions while she was enrolled in Medicaid and the

---

[2] Although Plaintiffs list other federal statutes in their Complaint, including the Rehabilitation Act of 1973, the Americans With Disabilities Act, and various provisions governing Medicaid, the Court understands Plaintiffs to only be asserting as their substantive causes of action claims under 42 U.S.C. § 1983 for Kliebert's alleged violations of federal law. *See* (Rec. Doc. No. 8 at ¶¶ 32-33). Plaintiffs' Opposition to the instant motion confirms that fact. While Plaintiffs discuss the requirements of the Medicaid Act, the enforceability of those requirements is argued only with reference to § 1983. (Rec. Doc. No. 18 at 4-6).

[3] In considering a motion to dismiss, the Court accepts as true all well-pleaded facts by the plaintiffs and views those facts in the light most favorable to the plaintiffs. *Stokes v. Gann,* 498 F.3d 483, 484 (5th Cir. 2007).

[4] Although Medicaid began as a program enacted by Congress, it exists as "a cooperative endeavor in which the Federal Government provides financial assistance to participating States to aid them in furnishing health care to needy persons." *Harris v. McRae*, 448 U.S. 297, 308 (1980). Subject to federal standards, "each participating State must develop its own program describing conditions of eligibility and covered services." *Bowen v. Massachusetts*, 487 U.S. 879, 883 (1988).

Waiver Program. After each occasion that D.B. received treatment, Plaintiffs requested payments be made using funds allocated to her through the Waiver Program. The Office for Citizens with Developmental Disabilities (OCDD), a state agency, denied each of the requests at various points in 2008 and 2009.

In 2010, Plaintiffs allege that DHH and OCDD officials advised Plaintiffs that Medicaid, rather than CC, was the primary payor for D.B.'s treatments. Subsequently, on September 3, 2010, Plaintiffs submitted a claim to the state agency responsible for administering Medicaid. Plaintiffs did not receive a response. They submitted a second claim on February 3, 2012. Plaintiffs allege that they have yet to receive a response to either claim.

## II. Procedural History

Plaintiffs originally filed suit against various state defendants for failure to reimburse Medicaid and CC benefits in 2011. That suit, captioned CA 11-3192, was dismissed without prejudice by this Court by order of May 29, 2012 on prescription grounds. The Court found that, based on Plaintiffs' Complaint, "because Plaintiffs' funding requests were denied in 2008 and 2009, the prescription period began accruing at that time and had run" by the time suit was filed. CA 11-3192, (Rec. Doc. No. 28 at 7). The Court did not separately consider Plaintiffs' additional argument that they had submitted further claims to

3

the state agency responsible for administering Medicaid, because Plaintiffs' filings gave no indication that these claims were submitted later than 2009. As the Court noted in dismissing the claim without prejudice, "[t]o the extent that Defendants alleged conduct constituted malfeasance in violation of federal law, Plaintiffs must plead such with enough specificity to determine that these acts, at a minimum, took place within the prescriptive period." (*Id*. at 9).

Rather than filing a motion to set aside or a motion to vacate the Court's prior decision under Rule 59 or Rule 60[5], Plaintiffs waited several months and then filed as an entirely new action the present suit. In the instant case, Plaintiffs again claim that DHH, either through Medicaid or OCDD, failed to provide federally required reimbursement to D.B. More specifically, Plaintiffs state - for the first time in a procedurally proper manner[6] - that they submitted certain claims to the state agency responsible for Medicaid reimbursements in 2010 and 2012, for which they have yet to receive a response.

Plaintiffs seek declaratory and injunctive relief to enjoin Defendant from continued implementation of invalid regulations

---

[5] The Court indicated in an order following dismissal that a motion under Rule 59 or Rule 60 was the proper vehicle for requesting the Court to reconsider its prior decision. CA 11-3192, (Rec. Doc. No. 40 at 2).

[6] Plaintiffs attempted to amend their Complaint in CA 11-3192 to include the 2010 submission, but only *after* the case had been dismissed. *See* (Rec. Doc. Nos. 32 and 35).

4

and policies. Plaintiffs also seek incidental money damages and penalties for (1) Defendant's failure to process Plaintiffs' Medicaid claims, and (2) Defendant's failure to implement D.B.'s plan of care. Additionally, Plaintiffs seek attorneys' fees and costs.

**Law and Analysis**

Defendant's Motion to Dismiss is based on two separate defenses. Defendant argues: (1) Plaintiffs fail to state a claim because an official capacity suit against a state official cannot proceed under 42 U.S.C. § 1983; and (2) Plaintiffs' claims are prescribed. The Court reviews each defense in turn.

### I. § 1983 Official Capacity Suits

Whether a state officer may be sued in their official capacity under 42 U.S.C. § 1983 depends on what relief is being sought by the plaintiff. An official capacity suit may proceed where the plaintiff is seeking only prospective injunctive relief, but must be dismissed where the plaintiff is seeking money damages. *Am. Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 921 (5th Cir. 1993); *Horton v. Mississippi State Senate*, 68 F.3d 468 (5th Cir. 1995); *see also Edelman v. Jordan*, 415 U.S. 651, 678 (1974) (holding the Eleventh Amendment bars suit for the retroactive payment of government benefits).[7]

---

[7] Defense counsel repeatedly cites *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) for the proposition that all official capacity suits are barred under § 1983 because a government official sued in their official

5

Here, Plaintiffs' only remaining claims are against Kliebert in her official capacity under 42 U.S.C. § 1983. Plaintiffs seek both injunctive and monetary relief. Pursuant to the cases cited above, Plaintiffs' claims for monetary relief must be dismissed, while their claims for injunctive relief may proceed. *See Blanchard v. Forrest*, 1994 WL 495857 at *1-2 (E.D. La. Sept. 6, 1994) (denying motion to dismiss plaintiffs' § 1983 official capacity suit for violations of the Medicaid Act wherein injunctive relief was sought).

Plaintiffs cite in their Opposition a number of cases to establish that they have stated a valid cause of action for all of their claims to relief. However, none of the cases cited deal with immunity issues, but instead discuss only whether a party has a private right of action to enforce Medicaid provisions under § 1983. Indeed, in the lone Fifth Circuit case cited by Plaintiffs, the only cause of action alleged was for injunctive relief. *See S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 585 (5th Cir. 2004) (plaintiff brought action "seeking injunctive and declaratory relief").

Accordingly, the Court finds that Plaintiffs' claims for monetary relief must be dismissed, and now moves to a

---

capacity may never be a "person" within the meaning of § 1983. That is flatly wrong, as recognized by the *Will* Court itself. *Will* at 71 n.10 (stating "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 . . . .").

6

consideration of whether Plaintiffs' claims for declaratory relief survive prescription.

## II. Prescription

Although § 1983 does not contain a federal statute of limitations, courts reviewing § 1983 claims apply the forum state's personal injury limitations period. *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994). In Louisiana, that period (known as prescription) is one year. La. Civ. Code art. 3492; *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998). However, federal law is used to determine when the claim arises. *Jacobsen* at 319. Under federal law, a claim arises "when the plaintiff knows or has reason to know of the injury which is the basis of the action" *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992) (internal citation omitted) and has information sufficient to "file suit and obtain relief." *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008). The standard is the same where only prospective relief is sought. *Id*.

Defendant argues that the Court already decided that Plaintiffs' claims are prescribed in its May 29, 2012 Order in CA 11-3192. The Court disagrees. That Order dismissed without prejudice Plaintiffs' claims for four CC Waiver Program "funding requests [] denied in 2008 and 2009," as well as Plaintiffs' claims that the named Defendants in that action had engaged in an unlawful pattern or practice and continuing violation of

federal law. CA 11-3192, (Rec. Doc. No. 28 at 7). Here, Plaintiffs raise as new matters the two Medicaid claims they subsequently made to the state in 2010 and 2012, which have gone unanswered. Although the 2010 request to Medicaid was mentioned in the Court's prior Order, it was not addressed by its reasoning - which was limited to the finding that Plaintiffs had "'reason to know'" they had a cognizable injury, at the latest, a year after the 2009 request was denied. *Id*. (quoting *Jackson* at 265). The matter now before the Court – i.e., when Plaintiffs had reason to know of their injury for claims which they never received a response – is a different matter.

In order to determine when Plaintiffs had reason to know they had been injured, the Court turns to the statutes governing state Medicaid procedure. State plans administering Medicaid are required to adhere to certain time requirements contained in 42 C.F.R. § 447.45. Most relevant to this proceeding, the state Medicaid agency must pay claims within "12 months of the date of receipt." *Id*. at (d)(4).

Plaintiffs submitted their first Medicaid claim on September 3, 2010 for payment. The state agency was therefore required respond no later than September 3, 2011. When they did not respond, Plaintiffs were on notice on that date that they had been injured by the lack of state action. *Jackson* at 265; *see also St. Amant v. Benoit*, 806 F.2d 1294, 1298 (5th Cir.

1987) (recognizing that government silence combined with previous denials of similar requests should lead a plaintiff to reasonably infer that they have been injured, thus commencing the applicable limitation period). Plaintiffs had one year from that date to file suit - by September 3, 2012. The instant case was filed on November 11, 2013 – outside the time period for filing a claim. The claim is therefore prescribed.[8]

The fact that Plaintiffs submitted a further Medicaid request in February of 2012 does not extend the prescription date. A plaintiff may not extend the limitation period under federal statutes by repeating the same claim to the state agency after already being placed on notice that their rights have been violated. *See Odaiyappa v. Bd. of Sup'rs of Louisiana State Univ.*, 933 F. Supp. 575, 577 (E.D. La. 1996)(holding that civil rights plaintiff may not "extend the limitation periods indefinitely simply by 'filing a series of appeals and fresh requests'") (quoting *Lever v. Nw. Univ.*, 979 F.2d 552, 555 (7th Cir. 1992); *Cf. Delaware State Coll. v. Ricks*, 449 U.S. 250, 261 n.15 (1980) ("Mere requests to reconsider [] cannot extend the

---

[8] The Court notes that this result may have been avoided had Plaintiffs' counsel included the 2010 date in Plaintiffs' original complaint or response to Defendants' motion dismiss in the 2011 suit, CA 11-3192. Had that date been presented, the Court may have concluded that at least that Medicaid claim survived prescription. Instead, counsel only included as the relevant dates the four denials from 2008 and 2009 – which the Court used as the measuring dates for prescription. CA 11-3192, (Rec. Doc. No. 28 at 7). Rather than seeking to vacate the Court's order on prescription and draw the Court's attention to the 2010 date, Plaintiffs waited several months and then filed the instant lawsuit.

limitations periods applicable to the civil rights laws."). Further, to the extent Plaintiffs argue a single continuing violation has persisted over several years, their claims fair no better: a plaintiff "may not employ the continuing violation theory to resurrect claims about discrimination concluded in the past, even though its effects persist." *Berry v. Bd. of Sup'rs of L.S.U.*, 715 F.2d 971, 979 (5th Cir. 1983) (internal citation omitted). Moreover, Plaintiffs offer no exception for extending the limitation period. *Bourdais v. New Orleans City*, 485 F.3d 294, 298 (5th Cir. 2007) ("Once it is established that the statutory limitations period has run, the plaintiffs have the burden to prove that some exception to prescription applies."). Accordingly, the claims must be dismissed.[9]

### III. Defendant's Motion for Sanctions

Because the Court determines that Plaintiffs' cause of action here is distinct from that which was previously alleged, the Court finds no cause to impose sanctions for improper filing

---

[9] The Court also questions Plaintiffs standing to bring the instant claims. Standing is an absolute requirement for federal jurisdiction, and without standing a plaintiff's claim may not proceed. *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010); *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999). In order to establish standing for injunctive relief, a plaintiff must establish a "real or immediate threat that the plaintiff will be wronged" in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Here, Plaintiffs' Complaint reveals that they are currently domiciled in Florida. (Rec. Doc. No. 8 at 5). They also indicate in their Opposition to the instant Motion that D.B. has not been enrolled in the CC Waiver Program or Louisiana Medicaid since 2011. (Rec. Doc. No. 18 at 8). Accordingly, it seems unlikely that Plaintiffs can maintain standing to challenge the future actions of Louisiana officials – since they no longer live in the state or are enrolled in the programs in question.

of the instant suit, nor does the Court find the suit was filed solely for the purpose of harassing Defendant. Sanctions are therefore inappropriate, and denied.[10]

**Conclusion**

Accordingly, and for the reasons enumerated above,

**IT IS ORDERED** that Defendant's Motion to Dismiss is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Sanctions is **DENIED**.

New Orleans, Louisiana, this 10th day of September, 2014.

_____
UNITED STATES DISTRICT JUDGE

---

[10] Given D.B.'s serious health issues, the distinct factual and legal circumstances surrounding this action, and the overall tenure of pertinent pleadings, we are disheartened by the unwarranted attempt to seek sanctions here.